IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUASHAE BROWN, et al., | : | |
| Plaintiffs | : | No. 1:22-cv-00165 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| THE GAP INC., et al., | : | |
| Defendants | : | |

## MEMORANDUM

In February 2022, Plaintiffs Quashae Brown and Quanyae Brown (the "Browns") and, separately, Trinity Tiina Arlez Bellamy Reid (collectively, "Plaintiffs") filed complaints in this Court asserting that employees of Defendant The Gap, Inc. (the "Gap") falsely accused them of retail theft and that Defendants Derry Township (the "Township"), Township Police Officers Marygrace Kepple, Dennis Eckenrode, Rian Bell, and Rebeca Kessler, and Township Detective Tom Pavone ("Officer Defendants," and with the Township, the "Township Defendants") unlawfully seized, arrested, and detained them.  (Doc. No. 1); see Reid v. Kepple, No. 1:22-cv-00165 (M.D. Pa. filed Feb. 2, 2022), ECF No. 1.  At the parties' request, the Court consolidated Reid's action into this one, following which the Browns (Doc. No. 26) and Reid (Doc. No. 27) filed amended complaints.  Now before the Court are four motions: the Township Defendants' motions to dismiss all claims asserted them (Doc. Nos. 30-31), and the Gap's motion to dismiss the claims asserted against it (Doc. Nos. 32, 34).  For the following reasons, the Court will grant in part and deny in part the motions.

## I.    BACKGROUND[1]

The allegations in this case arise from an incident that occurred on December 22, 2020,

---

[1] This background is drawn from the Plaintiffs' amended complaints, the allegations of which the Court has accepted as true.  See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The

when the Plaintiffs were shopping at the Tanger Outlets in Hershey, Pennsylvania.  (Doc. Nos. 26 ¶ 15, 27 ¶ 16.)  The Browns are sisters, and at the time, Quashae was a college student, while Quanyea and the Browns' cousin, Plaintiff Reid, were high school seniors.  (Doc. Nos. 26 ¶ 18, 27 ¶¶ 17-19.)  All three Plaintiffs are African American.  (Doc. Nos. 26 ¶ 17, 27 ¶ 18.)  While at the Tanger Outlets, Plaintiffs made purchases at various retailers, including the Gap Outlet and Old Navy, both of which are owned by Defendant Gap.  (Doc. Nos. 26 ¶¶ 6, 19, 27 ¶¶ 21-22.)

At around 12:51 p.m., Old Navy employee Beth Anne Staton ("Staton") called 911 to report a retail theft at Old Navy by three girls who had also allegedly stolen merchandise from the Gap Outlet.  (Doc. Nos. 26 ¶¶ 33-34, 27 ¶ 35.)  Dauphin County 911 Dispatch contacted the Derry Township Police Department ("DTPD"), and several Defendants—Detective Pavone and Officers Kepple, Eckenrode, Bell, and Kessler—reported to the scene.  (Doc. Nos. 26 ¶¶ 35-36, 27 ¶ 37.)  Kepple met with Staton at Old Navy.  (Doc. Nos. 26 ¶ 37, 27 ¶ 38.)  Staton was reviewing Old Navy surveillance footage because, as she told Kepple, she had received a call from a Gap Outlet employee, Tania Roman ("Roman"), who reported that Plaintiffs were "acting suspicious" and "had stolen from [the Gap Outlet] big time."  (Doc. Nos. 26 ¶ 41, 27 ¶ 40.)

Staton showed Officer Kepple the footage, which Staton averred depicted Quanyae stealing a baby onesie—valued at six dollars—at the 12:15 p.m. mark in the video.  (Doc. Nos. 26 ¶ 42, 27 ¶ 43.)  However, the video instead showed Quanyae putting the onesie back on the shelf and not taking it.  (Doc. Nos. 26 ¶ 43, 27 ¶ 44.)  Officers Kepple and Eckenrode proceeded

---

facts alleged in each respective amended complaint are substantially the same, as they arise from the same incident, with minor variations.  While the Court's recitation of the factual allegations from both amended complaints is provided in a single background section, the Court has separately analyzed the motions to dismiss as to the Browns and Reid, and the minor variations in their allegations do not affect the Court's ultimate conclusions.

to the Gap Outlet to interview Roman.  (Doc. Nos. 26 ¶ 45, 27 ¶ 47.)  Along the way, they

encountered and arrested Quanyae and Reid after accusing of them of stealing from Old Navy.

(Doc. Nos. 26 ¶¶ 21, 26, 27 ¶¶ 26, 48).  Kepple and Eckenrode handcuffed the girls, placed them

in separate police vehicles, searched them, and seized their belongings, including items they had

purchased.  (Doc. Nos. 26 ¶¶ 20-23, 27 ¶¶ 26-28.)  Minutes later, Officer Bell confronted

Quashae in the parking lot, arrested, handcuffed, and searched her, seized her belongings, and

placed her in a police car.[2]  (Doc. Nos. 26 ¶ 24, 27 ¶ 29.)  Plaintiffs denied having stolen any

merchandise from either the Gap Outlet or Old Navy and offered to submit their receipts to the

officers so that they could compare the receipts against the items in Plaintiffs' possession at the

time.  (Doc. Nos. 26 ¶¶ 23, 25, 27 ¶ 27.)  Meanwhile, Officer Kepple continued to the Gap and

spoke to Roman, who denied having reported any theft to Staton but admitted that she had told

Staton that Plaintiffs were acting suspicious.  (Doc. Nos. 26 ¶¶ 47-48, 27 ¶¶ 49-50.)

At around 1:45 p.m., Plaintiffs were transported to the DTPD.  Upon their arrival, the

Browns were placed in locked cells, and Reid was placed in a juvenile detention room.  (Doc.

Nos. 26 ¶¶ 30-32, 27 ¶¶ 32, 35-34.)[3]  Plaintiffs were released at 4:10 p.m.  (Doc. Nos. 26 ¶ 31, 27

¶ 35.)  No charges were filed.  (Doc. Nos. 26 ¶¶ 31-32, 27 ¶¶ 35-34.)

Throughout the investigation and arrests, the remaining Officer Defendants are alleged to

have had varying levels of awareness of the information that Kepple gained from watching the

footage and speaking with Staton and Roman.  (Doc. Nos. 26 ¶¶ 50-56, 27 ¶¶ 52-61.)  Officer

---

[2] The Browns and Reid both allege that Officer Bell conducted the arrest, search, and seizure
with respect to Quashae.  (Doc. No. 26 ¶ 24, 27 ¶ 29.)  Reid additionally alleges that Officer
Kepple took part in the arrest.  (Doc. No. 27 ¶ 29.)

[3] In Reid's complaint, paragraph numbers 34 and 35 are repeated, so that there are two different
paragraphs referring to each.  (Doc. No. 27 ¶¶ 34-35.)  This citation refers to the first paragraph
35 and the paragraph labeled paragraph 34 that immediately follows it.

Kessler met with both Staton and Roman and obtained information demonstrating that Plaintiffs had not stolen any items.  (Doc. Nos. 26 ¶ 50, 27 ¶ 52.)  Detective Pavone, who was at the scene throughout the investigation, was aware of the surveillance footage and the information obtained from Staton and Roman.  (Doc. Nos. 26 ¶ 51, 27 ¶ 53.)  Eckenrode and Bell "had information clearly demonstrating that there was no reasonable basis" to suspect Plaintiffs of theft.  (Doc. Nos. 26 ¶ 56, 27 ¶ 58.)  Plaintiffs also broadly allege that, prior to the arrests, Kepple and "other Derry Township police personnel" watched the footage.  (Doc. Nos. 26 ¶ 44, 27 ¶ 46.)

In their amended complaints, Plaintiffs assert claims for violations of their Fourth and Fourteenth Amendment rights against the Township Defendants pursuant to 42 U.S.C. § 1983 under theories of unreasonable seizure, false imprisonment, and false arrest; state law claims against the Township Defendants for willful misconduct, negligence, assault, battery, false arrest, and false imprisonment; and state law claims for abuse of process against the Gap.  (Doc Nos. 26 ¶¶ 62-80, 27 ¶¶ 69-89.)  The Gap and the Township Defendants filed their motions to dismiss Plaintiffs' amended complaints on June 21, 2022 (Doc. Nos. 30-32, 34), followed by briefs in support of their respective motions (Doc Nos. 33, 35, 37, 51).  Plaintiffs filed briefs in opposition (Doc. Nos. 39-41, 52), the last of which was filed by Reid on August 3, 2022 (Doc. No. 52).  The Gap filed reply briefs (Doc. Nos. 44-45), and the deadline for the Township Defendants to file reply briefs has lapsed.  All four motions are therefore ripe for disposition.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all

material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 664).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III.    DISCUSSION[4]

The Browns and Reid assert identical claims based on virtually the same allegations, with variances that are not dispositive of the Court's rulings on Defendants' motions to dismiss. Against the Township Defendants, Plaintiffs assert two federal claims—for violations of their Fourth Amendment right to be free from unlawful seizures, arrests, and detentions and for violations of their Fourteenth Amendment equal protection rights—and a variety of state law claims, including negligence, assault, battery, false imprisonment, and false arrest. (Doc. Nos. 26 ¶¶ 70-80, 27 ¶¶ 77-89.)  Against the Gap, Plaintiffs assert only state law abuse-of-process claims. (Doc. Nos. 26 ¶¶ 62-69, 27 ¶¶ 76.)  The Court first addresses Plaintiffs' claims against the Township Defendants, as those claims are, in part, federal claims, and will then turn to Plaintiffs' state law abuse-of-process claims against the Gap.

---

[4] In seeking dismissal of Plaintiffs' claims, the Township Defendants rely heavily on an incident report that they attached to their motions to dismiss. (Doc. Nos. 30-2, 31-2, 31-3.)  The Township Defendants appear to contend that the incident report conclusively establishes certain facts that contradict Plaintiffs' allegations. For example, the Township Defendants argue that the incident report shows that Officer Kepple reviewed the video footage not with Staton but only at the DTPD. (Doc. No. 51 at 10.)  The Court is mindful of the general rule that "[w]hen a document attached as an exhibit to a complaint conflicts with allegations made therein, the exhibits control," see Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 111-12 (3d Cir. 2018), but neither the Browns nor Reid attached the incident report to either their initial or amended complaints. (Doc. Nos. 1, 26, 27.)  Further, "[w]hile some courts have taken judicial notice of police reports and criminal complaints in resolving a motion to dismiss, others have declined to do so."  See Rankin v. Majikes, No. 3:14-cv-00699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014) (citations omitted) (collecting cases, including United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (stating that "the existence and content of a police report are not properly the subject of judicial notice"), and Linden v. City of Lansing, No. 13-cv-00638, 2013 WL 6858459, at *3 (W.D. Mich. Dec. 30, 2013) (stating that "[m]ost courts that have considered the issue have determined that police reports may not be considered as public records")).  The Court declines to take judicial notice of the incident report here. Nor will the Court take judicial notice of the Derry Township Police Department Voluntary Statement in which Staton averred that Plaintiffs were acting suspicious and stated, "we did on camera see 1 item concealed in the pocket of the girl w[ith] the while puffy coat." (Doc. No. 30-3.)

### A.      Federal Claims Against the Township Defendants

Plaintiffs assert their Fourth and Fourteenth Amendment claims against the Township

Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 is the vehicle by which private citizens

can seek redress for violations of federal constitutional rights committed by state officials.  See

42 U.S.C. § 1983.  The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

See id.  Section 1983 "does not . . . create substantive rights; it provides only remedies for

deprivations of rights established elsewhere in the Constitution or federal laws."  See Kneipp v.

Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim for relief under § 1983, a plaintiff

"must allege the violation of a right secured by the Constitution and laws of the United States"

and "show that the alleged deprivation was committed by a person acting under color of state

law."  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West

v. Atkins, 487 U.S. 42, 48 (1988)).

### 1.      Officer Defendants

The Township Defendants argue that Plaintiffs have failed to plead sufficient facts to

state claims for Fourth or Fourteenth Amendment violations against the Officer Defendants.

They argue that the Officer Defendants did not seize, arrest, or detain Plaintiffs.  (Doc. Nos. 37 at

16-20, 51 at 13-16.)  They alternatively argue that, even if Plaintiffs' allegations state Fourth

Amendment claims, the Officer Defendants are entitled to qualified immunity, and that any such

seizures, arrests, and detentions were properly based on probable cause to believe a crime had

been committed.  (Doc. Nos. 37 at 20-31, 51 at 16-25.)  As to Plaintiffs' Fourteenth Amendment

claims, the Township Defendants argue that the facts alleged in the amended complaints are insufficient to state such claims.  (Doc. Nos. 37 at 32, 51 at 25-26.)  The Court addresses each contention in turn.

### a.    Fourth Amendment Claims

Plaintiffs base their Fourth Amendment claims on theories of unreasonable seizure, false arrest, and false imprisonment.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  See U.S. Const. amend. IV.  The scope of what may be considered a Fourth Amendment seizure is broader than an arrest, see Black v. Montgomery Cnty., 835 F.3d 358, 365 (3d Cir. 2016), as amended (Sept. 16, 2016), and goes beyond situations that involve "a trip to the station house" followed by prosecution, see Terry v. Ohio, 392 U.S. 1, 16 (1968).  The Third Circuit has adopted the theory of a "continuing seizure," as expressed by Justice Ginsburg in her concurrence in Albright v. Oliver, 510 U.S. 266 (1994).  See Black, 835 F.3d at 366-67.  Under the "continuing seizure" theory, a Fourth Amendment seizure may encompass pretrial restrictions short of an arrest.  See Schneyder v. Smith, 653 F.3d 313, 320 (3d Cir. 2011).

To state a claim for an unreasonable seizure, a plaintiff must plausibly allege that "(1) there was a seizure, and (2) the seizure was constitutionally unreasonable."  See Raab v. City of Ocean City, No. 11-cv-06818, 2014 WL 3894061, at *5 (D.N.J. Aug. 8, 2014) (citing Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000)).  "In a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."  Lozano v. New Jersey, 9 F.4th 239, 245 (3d Cir. 2021) (internal quotation marks omitted).  To state a "claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful."  See James v. City of Wilkes-Barre, 700

F.3d 675, 682-83 (3d Cir. 2012).

As to the first elements of Plaintiffs' claims—seizure, arrest, and detention—Plaintiffs allege that they were seized, handcuffed, detained in police vehicles, arrested, transported to the DPTD, placed in cells (the Browns) and a detention room (Reid), and held for over two hours before they were released; the incident lasted about three hours in total.  (Doc. Nos. 26 ¶¶ 20-22, 24, 30-32, 27 ¶¶ 26, 28-29, 32, 35-34.)  These averments, along with reasonable inferences drawn from them, plausibly allege: (1) a seizure, which occurs "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," see Terry, 392 U.S. at 19 n.16; (2) an arrest, which "qualifies as a 'seizure' of a 'person,'" see Ashcroft v. al-Kidd, 563 U.S. 731, 735-36 (2011); and (3) a detention, see James, 700 F.3d at 683 (noting that an arrest without probable cause constitutes false imprisonment, but finding no Fourth Amendment seizure where the plaintiff "was free to leave at any time").

Regarding the second elements of Plaintiffs' Fourth Amendment claims, Plaintiffs must plead, respectively, that their alleged seizures were constitutionally unreasonable, that they were arrested without probable cause, and that they were detained unlawfully.  If the "police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest," see Williams v. Ponik, 822 F. App'x 108, 114 (3d Cir. 2020) (unpublished) (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)), cert. dismissed, 141 S. Ct. 2892 (2021), and an arrest constitutes a Fourth Amendment seizure, see Ashcroft, 563 U.S. at 735-36.  Thus, plausible allegations of an arrest made without probable cause can establish unlawful seizure and false imprisonment claims.

Here, because Plaintiffs have plausibly alleged that the Officer Defendants lacked probable cause to arrest them, they have adequately stated unreasonable seizure, false arrest, and

false imprisonment claims against the Officer Defendants.  Plaintiffs allege that the Officer

Defendants had actual knowledge that they did not commit retail theft but subjected them to

seizures, arrests, and a detentions nonetheless.  Plaintiffs further allege that, at the time of their

seizures, arrests, and detentions: (1) the Officer Defendants saw the video surveillance footage

and/or learned of what it depicted; (2) the video showed Quanyae returning the onesie to the

shelf; (3) Plaintiffs told the Officer Defendants that they had not stolen anything; (4) the Officer

Defendants refused Plaintiffs' requests to compare their receipts to the merchandise in their

possession at the time; and (5) Roman disclaimed ever having told Staton that any of the

Plaintiffs had stolen anything.  These allegations state a plausible claim for Fourth Amendment

violations based on a constitutionally unreasonable seizure, an arrest without probable cause, and

an unlawful detention.

Even if, as the Township Defendants contend, the Officer Defendants did not formally

arrest Plaintiffs, there need not be a formal arrest to support a claim for false arrest based on a

lack of probable cause.  Rather, "[i]n the absence of a formal arrest, the court must consider

whether the plaintiff can establish a 'restraint on freedom of movement of the degree associated

with formal arrest.'"  See Schultz v. Hughesville Borough, No. 4:10-cv-00262, 2011 WL

3273076, at *8 (M.D. Pa. July 29, 2011) (quoting Bristow v. Clevenger, 80 F. Supp. 2d 421, 436

(M.D. Pa. 2000) (quoting 5 Am. Jur. 2d Arrest § 4 (stating that "[w]hether the restraint or

detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the

detention and the degree of restraint")) (citing United States v. Lampkin, 464 F.2d 1093, 1095

(3d Cir. 1972) (noting that "[t]here can be no arrest where there is no restraint, or where the

person sought to be arrested is not conscious of any restraint"))) (stating that "[a]n arrest is a

seizure of the person"); see also Jordan v. Edison City Police Dep't, No. 08-cv-05855, 2009 WL

564229, at *4 (D.N.J. Mar. 5, 2009) (citing <u>Albright</u>, 510 U.S. at 274).

Accordingly, insofar as "[a] suspect is considered under arrest when a police officer interrupts the freedom of the suspect and restricts his or her liberty of movement," <u>see</u> 5 Am. Jur. 2d Arrest § 4, the Court finds that Plaintiffs have plausibly alleged an arrest irrespective of whether they were, as the Township Defendants argue, not subjected to a formal arrest.   To reiterate, Plaintiffs allege that they were seized, handcuffed, searched, detained in police vehicles, and confined at the police station for over two hours (as well as formally arrested, according to the amended complaints).  (Doc. Nos. 26 ¶¶ 30-32, 27 ¶¶ 35-34.)  These allegations give rise, at a minimum, to a plausible inference that Plaintiffs were sufficiently restrained in their freedom and liberty of movement to state a claim for false arrest and, <u>a fortiori</u>, for unlawful seizure and false imprisonment.  <u>See Black</u>, 835 F.3d at 364; <u>Terry</u>, 392 U.S. at 19 n.16.  Therefore, the Township Defendants' contention that Plaintiffs were never formally arrested is unavailing, as is their related contention that, at best, an investigatory stop occurred. (Doc. Nos. 37 at 18 n.3, 51 at 12 n.2.)

The Township Defendants identify a pair of unreported cases that they claim support their position that Plaintiffs have failed to plausibly allege a seizure, but their reliance on those cases is misplaced.  (Doc Nos. 37 at 15-19, 51 at 10-11.)  The Township Defendants first cite to <u>Heilimann v. O'Brien</u>, No. 3:14-cv-01271, 2017 WL 898160, at *1 (M.D. Pa. Mar. 7, 2017).  In that case, the late District Judge James M. Munley, addressing a motion for partial summary judgment, found it unnecessary to consider the plaintiff's contention that his initial detainment and arrest "amount[ed] to a seizure," as that contention related to his false arrest claim, which the defendants did not challenge in their motion.  <u>See id.</u> at *6.  <u>Heilimann</u> is therefore inapposite. The Township Defendants next cite to <u>Saterstad v. Derry Township</u>, No. 1:20-cv-00765, 2021

11

WL 199375 (M.D. Pa. Jan. 20, 2021), which is inapplicable because the decision did not analyze

whether an initial arrest constituted a seizure.  See id. at *5.  Having found no merit to the

Township Defendants' contentions regarding Plaintiffs' Fourth Amendment claims, unless the

Officer Defendants are immune from suit, see infra, the Court will deny the Township

Defendants' motions to dismiss Plaintiffs' Fourth Amendment claims.

### b.     Fourteenth Amendment Equal Protection Claims

The Fourteenth Amendment provides that a state may not "deny to any persons within its

jurisdiction the equal protection of the laws."  See U.S. Const. amend. XIV.  "The central

purpose of the Clause is to prevent the States from purposely discriminating between individuals

on the basis of race."  Johnson v. Fuentes, 704 F. App'x 61, 65 (3d Cir. 2017) (unpublished)

(internal quotation marks omitted).  The parties appear to agree that the relevant standard for

evaluating Plaintiffs' equal protection claims is the standard that applies to the racial-profiling

context.  (Doc. Nos. 51 at 25, 52 at 24.)  Specifically, the parties cite to Bradley v. United States,

299 F.3d 197 (3d Cir. 2002), in which the Third Circuit stated as follows: "[t]o make an equal

protection claim in the profiling context, [a plaintiff must plead and ultimately] . . . prove that the

actions of [government] officials (1) had a discriminatory effect and (2) were motivated by a

discriminatory purpose."  See id. at 205.

Plaintiffs aver that the Officer Defendants "acted with a predisposed bias due to the fact

that [Plaintiffs] are African-American."  (Doc. Nos. 26 ¶ 57, 27 ¶ 63.)  Plaintiffs allege that the

Officer Defendants seized, arrested, detained, and imprisoned Plaintiffs "based on the fact they

were African-American individuals."  (Doc. Nos. 26 ¶ 72(e), 27 ¶ 81(e).)  Plaintiffs maintain that

the Officer Defendants' conduct resulted in "[v]iolations of [their] rights under the Fourteenth

Amendment . . . to not be denied equal protection of the law[.]"  (Doc. No. 26 ¶ 60(b)); see (Doc.

No. 27 ¶ 67(b)) (same as to Reid).  Plaintiffs aver that the Officer Defendants "deprived [them] of their right to be secure in their person from an unlawful search and seizure and to not be denied equal protection of the laws and thus violated their rights under the Fourth and Fourteenth Amendment[.]"  (Doc. No. 26 ¶ 71) (emphasis added); see (Doc. No. 27 ¶ 80) (same as to Reid).

Accepting these allegations as true, as is required in the context of Rule 12(b)(6) motions to dismiss, the Court concludes that Plaintiffs—who are African American and therefore belong to a protected class—have sufficiently alleged an equal protection claim based on the allegations that they were wrongfully targeted, seized, detained, and arrested due not to objective proof of criminal activities but to the Officer Defendants' discriminatory biases.  See, e.g., Urrutia v. Quill, No. 1:05-cv-00259, 2005 WL 2648339, at *3 (M.D. Pa. Oct. 17, 2005) (concluding that plaintiff stated an equal protection claim based on allegations that defendants arrested him "without probable cause" and that "their actions were motivated by [his] race").  Accordingly, unless the Officer Defendants are immune from suit, see infra, the Court will deny the Township Defendants' motions to dismiss Plaintiffs' equal protection claims.

### c.     Qualified Immunity

The Township Defendants alternatively argue that, even if Plaintiffs have plausibly alleged constitutional violations, the Officer Defendants are entitled to qualified immunity because they had probable cause to arrest Plaintiffs based on Staton's statements.  (Doc. Nos. 37 at 18-26, 51 at 12-18.)  Qualified immunity "protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  See Wood v. Moss, 572 U.S. 744, 745 (2014) (internal quotation marks omitted).  Because qualified immunity "is an affirmative defense," the "burden of proving the prerequisites

for its application rests with the party seeking to invoke it," see Balcom v. City of Pittsburgh, No. 2:19-cv-00506, 2022 WL 950039, at *2 (W.D. Pa. Mar. 30, 2022), and it "will be upheld on a [motion to dismiss] only when the immunity is established on the face of the complaint," see Taylor v. Rosa, 856 F. App'x 376, 378 n.3 (3d Cir. 2021) (unpublished) (alteration in original) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 291 (3d Cir. 2006)).  When evaluating a defense of qualified immunity in the context of a 12(b)(6) motion to dismiss, the Court must accept the plaintiffs' "allegations as true and draw all inferences" in their favor.  See George v. Rehiel, 738 F.3d 562, 571 (3d Cir. 2013).

Regarding the first prong of the qualified-immunity analysis—statutory or constitutional violations—the Court has already determined, supra, that Plaintiffs' allegations state plausible claims for violations of their constitutional rights.  Accordingly, the Court must next "decid[e] if the particular right outlined in [Plaintiffs' amended complaints] was clearly established at the time of [their alleged seizures/arrests/detentions]."  See Clark v. Coupe, No. 21-2310, 2022 WL 17246324, at *8 (3d Cir. Nov. 28, 2022) (finding dismissal for qualified immunity "premature given the nature of [the plaintiff's] allegations").  In doing so, the Court must consider "whether the state of the law when the offense occurred gave the [Officer Defendants] fair warning that their conduct violated [Plaintiffs'] [Fourth] Amendment right[s]."  See id. (internal quotation marks omitted).  "To determine whether such 'fair warning' existed," the Court must "search first for 'factually analogous' cases in the Supreme Court, and then turn [its] inquiry to whether 'binding opinions from [the Third Circuit]' were in existence."  See id. (quoting Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021)).  If "neither source provides relevant caselaw, [the Court] consider[s] whether a robust consensus of cases of persuasive authority in the Court of Appeals could clearly establish a right for purposes of qualified immunity," and the Court "may

14

also take into account district court cases." See id. (internal quotation marks omitted).

The above framework requires the Court to first "identify the specific right [Plaintiffs] allege was violated." See id. at *9. "This requires [the Court] to frame the right 'in light of the specific context of the case, not as a broad general proposition.'" See id. (quoting Peroza-Benitez, 994 F.3d at 165). Although a "right must be defined with a high degree of specificity to be clearly established," see Dennis v. City of Phil., 19 F.4th 279, 288 (3d Cir. 2021), "state officials can still receive fair warning that their conduct is violative even in 'novel factual circumstances' never previously addressed in caselaw," see Clark, 2022 WL 17246324, at *9 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Here, based on the allegations in Plaintiffs' amended complaints, the "particular conduct at issue," see Clark, 2022 WL 17246324, at *9, was the Officer Defendants' seizure, arrest, and detention of Plaintiffs for retail theft based on video surveillance that demonstrated that no theft had occurred.[5, 6] Plaintiffs allege that Staton accused them of retail theft based on a recording of the Gap's video surveillance, which according to Staton, depicted one Plaintiff (Quanyae) stealing a onesie but, in fact, depicted Quanyae returning the onesie to a shelf. (Doc. Nos. 26 ¶¶ 42-43, 27 ¶¶ 43-44.) Plaintiffs also allege that Staton's only other basis upon which she accused Plaintiffs of retail theft—her claim that Roman informed her that Plaintiffs had "stolen big time"

---

[5] The Township Defendants do not suggest a right and instead argue, for instance, that "nothing in the law concerning the formulation of probable cause at the time of the investigatory detention clearly placed [them] upon notice that their conduct may have abridged Plaintiffs['] Fourth Amendment [r]ights." (Doc. No. 51 at 16.)

[6] Plaintiffs' Fourteenth Amendment equal protection claims are essentially the same as their Fourteenth Amendment claims except that the latter involve allegations of discriminatory seizures/arrests/detentions. To the extent Plaintiffs' Fourth Amendment allegations are sufficient to overcome the Township Defendants' qualified immunity defense, the Court will not separately address qualified immunity as to Plaintiffs' Fourteenth Amendment equal protection claims.

from Old Navy before entering the Gap—was false.  (Doc. Nos. 26 ¶¶ 41, 47-48, 27 ¶¶ 40, 49-50.)  Plaintiffs aver that the Officer Defendants seized/arrested/detained them for retail theft rather than determining whether there was objective proof of any theft separate and apart from the video, which was exculpatory.  "Viewing these allegations in their totality," see Clark, 2022 WL 17246324, at *9, the Court defines the right allegedly violated by the Officer Defendants as follows: the right to be free from a seizure/arrest/detention based on accusations of retail theft where the only objective evidence upon which the accusations were based—video surveillance—showed that no theft had occurred.

In "determining whether this articulated right was clearly established at the time" of the Officer Defendants' conduct, the Court must "broaden the scope beyond determining whether 'the very action in question has been held unlawful.'"  See Clark, 2022 WL 17246324, at *9 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "The Supreme Court does not require that earlier cases share the same or even similar facts for a right to be deemed clearly established; it is enough that the prior cases are 'factually analogous.'"  Id. (quoting Peroza-Benitez, 994 F.3d at 165).  The inquiry into analogous case law similarly requires the Court to "take[] a broad view of what constitutes an established right of which a reasonable person would have known."  See id. (Peroza-Benitez, 994 F.3d at 166).

Undertaking this inquiry, the Court notes at the outset that Plaintiffs have not pointed to any authority, either in the Supreme Court or the Third Circuit, involving the same facts alleged in this case.  Nor has the Court found any such authority.  Nevertheless, and as discussed above, the Court's inquiry is broader in scope than a mere determination as to whether precedential authority has addressed the same or closely similar factual circumstances as presented here.  See id.  Instead, the Court's task is to look to factually analogous precedent to determine whether the

Officer Defendants had fair warning that their conduct, as alleged in the amended complaints, was unlawful.  As discussed below, there is ample authority upon which to conclude that the Officer Defendants had such fair warning.

As a preliminary matter, the Court's determination as to "whether it would be clear to a reasonable officer that [the Officer Defendants'] conduct was unlawful in the situation [they] confronted" involves an "examination of the crime at issue," here, retail theft.  See Gilles v. Davis, 427 F.3d 197, 203-04 (3d Cir. 2005) (internal quotation marks omitted).  Under Pennsylvania law, "[a] person is guilty of a retail theft if," in relevant part:

> [He or she] takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof.

See 18 Pa. C.S.A. § 3929(a)(1).  The Court must determine whether the Officer Defendants, by accusing and then seizing, arresting, and detaining Plaintiffs for carrying away merchandise under the circumstances presented here, violated a clearly established right.

Almost three decades ago, the Third Circuit held that there "is no question that . . . the right to be free from arrest except on probable cause[] was clearly established."  See Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995); see also Andrews v. Scuilli, 853 F.3d 690, 705 (3d Cir. 2017) (same).  The Third Circuit has also stated that "[p]olice officers clearly know that they need probable cause to arrest someone and we can assume that they know they face personal liability if they arrest someone without probable cause."  See George, 738 F.3d at 583.  Over two decades ago, the Third Circuit—addressing, on summary judgment, a false arrest claim based on allegations that a police officer knowingly omitted information from a warrant application—stated that officers "contemplating an arrest [are] not free to disregard plainly

exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."  See Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999)).  That statement is a direct quote from Kuehl, a 1999 precedential Eighth Circuit Court of Appeals case involving a claim of qualified immunity by an officer who had allegedly made an arrest for simple assault without probable cause.  See Kuehl, 173 F.3d at 649.  Acknowledging that "[t]he Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established," the Eighth Circuit stated: while "an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime," the "officer may not arrest the suspect if, in addition, the officer is aware" of, inter alia, a "videotaped account of the crime that conclusively establish[es] the suspect's innocence." See id. at 649 (emphasis added) (citation omitted).  The Eighth Circuit ultimately affirmed the decision of the district court below to deny a motion for summary judgment on the basis that the officer-defendant was not entitled to qualified immunity.[7]

The Eighth Circuit in Kuehl, in turn, cited to Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1257 (10th Cir. 1998) (affirming district court's denial of summary judgment), which bears striking similarities to the instant case.  Ms. Baptiste "was shopping at a J.C. Penney store and purchased a sterling silver ring," but upon exiting the store, she was stopped by J.C. Penney security guards, "who had been watching Ms. Baptiste on a store monitor" and "believed [she]

---

[7] The Eighth Circuit also stated that "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not [be] unduly hampered . . . if the agents . . . wait[] to obtain more facts before seeking to arrest."  See Kuehl, 173 F.3d at 650 (alterations in original) (internal quotation marks omitted).  In a similar vein, under Pennsylvania law, "[l]aw enforcement officers shall ordinarily institute summary proceedings by citation" rather than by an arrest, see 234 Pa. Code Rule 402, and retail theft is a "[s]ummary offense when the offense is a first offense and the value of the merchandise is less than $150," see 18 C.S.A. § 3929(b)(1)(i).

had stolen a ring." See id. at 1254. The guards did not find a stolen ring but called the local

police department. See id. The responding officer "spoke with the security guards and viewed

the security videotape which served as the basis for the security guards' allegations." See id.

The officer searched Baptiste's bag and purse and had her empty her pockets, at which point she

produced a J.C. Penney ring and receipt for that purchase. See id. at 1255. Another officer

arrived at the scene, and that officer, after viewing "at least a portion of the security videotape,"

conducted a pat-down search of Baptist, "finding nothing." See id.

Affirming the district court's denial of the officers' qualified-immunity defense, the

Tenth Circuit stated as follows:

> [I]t is undisputed that Officer Hernholm viewed the videotape. In making the
> probable cause determination based on the totality of the circumstances, the
> videotape therefore must be considered independent of any interpretation by the
> security guards. The videotape, as discussed above, does not suggest criminal
> conduct, but is instead consistent with Ms. Baptiste's version of events. The
> allegations of the security guards, based solely on their interpretation of events
> exactly recorded on the videotape, add nothing to the totality of the circumstances.
> The other information known to the officers, including the search of Ms. Baptiste's
> belongings which revealed no stolen merchandise, her production of the receipts
> for two rings, and her explanation of the events, tended to negate probable cause.
> Based on the totality of the circumstances, a reasonable officer therefore would not
> have believed there was probable cause to arrest Ms. Baptiste. The district court
> did not err in denying the officers qualified immunity.

See id. at 1259-60.

Additionally, numerous district courts in this circuit have defined, as a sufficiently

specific, clearly established right for the purpose of analyzing a qualified-immunity defense, the

right to be free from arrest except upon probable cause. See Donohue v. Rineer, No. 1:10-cv-

01324, 2010 WL 5135892, at *5 (M.D. Pa. Dec. 10, 2010) (adopting definition of clearly

established right as the right to be free from an arrest on a warrant unless "supported by probable

cause"); see also, e.g., Catalano v. City of Newark, No. 15-cv-04189, 2017 WL 6265090, at *11

(D.N.J. Dec. 8, 2017) (stating, "[t]here should be no doubt that the right to be free from arrest without probable cause is clearly established").  In <u>Donohue</u>, for example, the officer-defendants moved to dismiss a Fourth Amendment malicious prosecution claim asserted against them.  <u>See</u> <u>Donohue</u>, 2010 WL 5135892, at *5.  The court rejected the officers' qualified immunity defense at that stage of the proceedings based on the plaintiff's allegations that the officers "lacked probable cause, ignored pertinent information, presented evidence devoid of merit, and falsified, exaggerated, distorted and misrepresented evidence that was available" in securing an arrest warrant.  <u>See</u> <u>id.</u>

Based on all the above authority, and accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court concludes that the Officer Defendants had fair warning that by seizing/arresting/detaining Plaintiffs based on an accusation of retail theft that was not only unsubstantiated but also refuted by the very evidence (video surveillance) upon which the accusation was based, they violated Plaintiffs' constitutional rights.

According to the Township Defendants, probable cause was properly based on the information gathered from Staton, whom Defendants argue was reliable as an informant or as a victim of the alleged crime under the multi-factor test in <u>United States v. Torres</u>, 534 F.3d 207 (3d Cir. 2008).[8]  (Doc. Nos. 37 at 23-28, 51 at 19-22.)  Even assuming <u>Torres</u>, which addressed probable cause in the context of a motion to suppress evidence in a criminal case, applied in this context, the allegations in Plaintiffs' amended complaints do not support this theory.  The timeline reflected in the amended complaints indicates that Staton told Officer Kepple she was reviewing the Gap's surveillance footage because Roman had called her stating that "the

---

[8] The stop in <u>Torres</u> was an investigative stop, for which an officer requires only reasonable suspicion, not probable cause.  <u>See</u> 534 F.3d at 210.

individuals depicted on the video had been 'acting suspicious' and had 'stolen from them big time.'" (Doc. Nos. 26 ¶ 41, 27 ¶ 40.)  From that allegation, it can be reasonably inferred that Staton did not first observe any theft before watching the video and relied on the video alone for her statement that Quanyae had stolen the onesie.  The objective facts that were observable in the video would, as a matter of common sense, defeat any reasonable belief that was based on Staton's description of the video.

In concluding that Plaintiffs' allegations overcome the Township Defendants' claim of qualified immunity, the Court is mindful of the requirement that courts "analyze separately the conduct of each [defendant]" as applied to each asserted claim when assessing a qualified immunity defense asserted by multiple defendants.  See Grant v. City of Pittsburgh, 98 F.3d 116, 123 (3d Cir. 1996).  However, the Township Defendants do not argue that one or more Officer Defendants should be treated differently for purposes of qualified immunity, and it is their burden to do so.  See Balcom, 2022 WL 950039, at *2.  In their arguments concerning qualified immunity, they refer to the Officer Defendants collectively as the "Moving Defendants" and do not mention any Officer Defendant by name or distinguish each officer's conduct as pertains to Plaintiffs' allegations.  (Doc. Nos. 27 at 20-28, 51 at 16-22.)  Further, Plaintiffs have alleged sufficient facts to implicate each Officer Defendant in the allegedly unlawful conduct, see supra.  Accordingly, the Court is unable to conclude—as a matter of law—that any of the Officer Defendants are entitled to qualified immunity at this time.  Thus, the Court will deny the Township Defendants' motions to dismiss Plaintiffs' federal constitutional claims against the Officer Defendants and turn to an analysis of Plaintiffs' claims against the Township itself.

### 2.    The Township

Municipalities such as Derry Township are considered "persons" under § 1983 and may

therefore be held liable for injuries caused by violations of constitutional rights.  See Monell v.

N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  They can only be held liable, however,

"for their own illegal acts."  See Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986).  It is only

when a municipality's "execution of [a] policy or custom . . . inflicts the injury" that the

municipality "as an entity is responsible under § 1983."  See Monell, 436 U.S. at 694.  To plead

a § 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional

violation (2) caused by the municipality's execution of a municipal policy or custom.  See Natale

v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted

and promulgated by [a local governing] body's officers."  See City of Canton v. Harris, 489 U.S.

378, 385 (1989).  A custom is "an act 'that has not been formally approved by an appropriate

decision maker,' but is 'so widespread as to have the force of law.'"  See Natale, 318 F.3d at 584

(quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  In

order to recover from a municipality under this theory of liability, a Plaintiff must show "a direct

causal link between the municipal policy or custom and the alleged constitutional deprivation."

See City of Canton, 489 U.S. at 385.  Complaints alleging municipal liability under § 1983 are

not subject to heightened pleading standards.  See Leatherman v. Tarrant Cnty. Narcotics

Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  However, a plaintiff attempting to

establish a Monell claim must "identify a custom or policy, and specify what exactly that custom

or policy was."  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

In the alternative, a municipality may be liable under § 1983 for a failure to train,

monitor, or supervise; however, the failure alleged in such a circumstance must amount to

"deliberate indifference to the constitutional rights of persons with whom the police come in

contact." See City of Canton, 489 U.S. at 388.  To establish deliberate indifference in this

context, a plaintiff must generally show the failure alleged "has caused a pattern of violations."

See Berg, 219 F.3d at 276.  Where a failure to train claim is alleged based on a single incident,

the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the

alleged constitutional deprivation would occur and the need for further training "must have been

plainly obvious."  See City of Canton, 489 U.S. at 390 n.10.  Further, "[l]iability cannot rest only

on a showing that the employees 'could have been better trained or that additional training was

available that would have reduced the overall risk of constitutional injury.'"  See Thomas v.

Cumberland Cnty., 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Twp., 946

F.2d 1017, 1030 (3d Cir. 1991)).

Here, as to the first element of Plaintiffs' Monell claims—the existence of an underlying

constitutional violation—the Court has already concluded that Plaintiffs have plausibly alleged

violations of their constitutional rights.  However, as discussed below, Plaintiffs' Monell claims

fail with the Court's analysis of the second element.

Plaintiffs' allegations concerning the second element of their Monell claims against the

Township are wholly conclusory.  Plaintiffs allege that the Township: (1) "had a custom, policy,

practice, and pattern of allowing police officers and detectives working within the [DPTD] . . . to

engage in the type of wrongful conduct alleged" in their amended complaints; (2) "failed to

formulate, implement, train, enforce, and/or discipline as to sufficient customs, policies, or

practices which would prevent police officers and detectives working within the [DTPD] . . .

from engaging in the type of wrongful conduct alleged" in their amended complaints; (3) "has a

duty to adequately train, supervise, monitor, and discipline police officers and detectives

working within the [DTPD] . . . to protect citizens from the type of wrongful conduct alleged

herein"; (4) along with "its policymakers, including but not limited to the township's board of supervisors as well as its supervisory agents and/or employees in the [DTPD], acted with deliberate indifference to an unreasonable risk that the rights of citizens with whom police officers and detectives within the [DTPD] come into contact would be deprived of their rights as guaranteed by the Fourth and Fourteenth Amendments . . . , thereby directly and proximately causing the aforesaid unlawful detentions, arrests, imprisonments, searches, and seizures" of Plaintiffs; and (5) directly, proximately, and foreseeably caused Plaintiffs to "suffer[] the violations and incurred the damages and harms" for which they seek relief.  (Doc. Nos. 26 ¶¶ 73-77, 27 ¶¶ 82-86.)

As the above allegations reflect, Plaintiffs' amended complaints do not contain any non-conclusory "facts showing the existence of a policy or a custom attributable to the Township which deprived [them] any constitutional right."  See Titus v. Newtown Twp., 621 F. Supp. 754, 755 (E.D. Pa. 1985).  Plaintiffs' allegations do not "specify what exactly [the] custom or policy [that harmed them] was," see McTernan, 564 F.3d at 658, and merely "allege[] a single instance of [related] arrest[s] based on a [proven] false report," which "is insufficient to state a claim of municipal liability," see Deemer v. City of Oil City, No. 1:19-cv-00380, 2021 WL 4391275, at *5 (W.D. Pa. Sept. 24, 2021).  "What [Plaintiffs do] allege [] are rather vague and conclusory allegations of a [Township] policy, practice, or custom . . . , [but] [s]uch conclusory and general averments are insufficient and fail[] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability."  See Deemer, 2021 WL 4391275, at *5 (sixth alteration in original) (internal quotation marks omitted) (quoting Wood v. Williams, 568 Fed. App'x 100, 102-04 (3d Cir. 2014) (unpublished) (quoting McTernan, 564 F.3d at 658-59))).

Further, Plaintiffs have not identified a "failure to provide specific training that has a

causal nexus with [their] injuries" and have not pleaded any facts indicating "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  See Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn, 946 F.2d at 1030).  Instead, Plaintiffs' allegations of a failure to train consist largely of conclusory assertions echoing the appropriate legal standard without providing factual support.  Such allegations are insufficient to plead a Monell claim based on a failure to train.  See id.; see also, e.g., Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001) (dismissing failure-to-train claim where the plaintiff pleaded no facts to support the contention that his injuries were caused by a failure to train, failed to identify the specific training the city should have offered, and failed to establish that training was not provided).

Nor can Plaintiffs' claims of failures to supervise, discipline, and monitor be pleaded in conclusory fashion.  See, e.g., Moresi v. City of Phil., No. 15-cv-00038, 2015 WL 4111724, at *4 (E.D. Pa. July 8, 2015) (dismissing Monell claims asserting "failure to investigate, supervise, or discipline [] police officers" where, "[a]part from the single incidence of alleged police misconduct against [the plaintiff], [the plaintiff] plead[ed] no other facts necessary to establish a municipal liability claim").  Plaintiffs' conclusory assertions simply fail to state viable claims for failures to supervise, discipline, and monitor against the Township.  Accordingly, the Court will grant the Township Defendants' motions to dismiss Plaintiffs' Monell claims.

### B.    State Law Claims Against the Officer Defendants

Plaintiffs also allege several state law claims against the Officer Defendants.  The Browns allege willful misconduct and negligence, assault, battery, and false arrest and imprisonment.  (Doc. No. 26 ¶ 79.)  Reid alleges the same claims except for false arrest.  (Doc. No. 27 ¶ 88.)  The Township Defendants move to dismiss all of these claims.  (Doc. Nos. 37 at

26-32, 51 at 18-23.)  The Township Defendants argue that the Officer Defendants had probable

cause to believe that Plaintiffs committed a crime, and that, therefore, Plaintiffs' claims for

assault, battery, and false arrest and imprisonment necessarily fail.  (Doc. Nos. 37 at 26, 51 at

18.)  The Township Defendants do not address the claims for willful and negligent conduct.

As an initial matter, the Court notes that while Plaintiffs broadly allege that the Officer

Defendants' "acts and omissions . . . constitute[d] willful misconduct and negligence as well as

assault, battery, false arrest, and false imprisonment" (Doc. No. 26 ¶ 79, 27 ¶ 88), Plaintiffs do

not appear to assert standalone claims for negligence and willful misconduct.  Rather, based on

their amended complaints and briefing, Plaintiffs appear to have alleged willful and negligent

conduct in an attempt to overcome the broad immunity afforded municipal employees for claims

of negligence that fall short of willful conduct.  See Korth v. Hoover, 190 F. Supp. 3d 394, 408

(M.D. Pa. 2016) (citing Pa. C.S.A. §§ 8545, 8550).  Therefore, the Court will limit its analysis

of Plaintiffs' state law claims to their asserted causes of action for assault, battery, and false

arrest and imprisonment, all based on allegations of willful conduct.

Regarding Plaintiffs' claims for assault, battery, and false arrest and imprisonment,

Plaintiffs have stated prima facie causes of action because they have plausibly alleged that the

Officer Defendants used force to restrain them, intended to and did confine Plaintiffs in a manner

that harmed them, and lacked probable cause to do so.  See Boyden v. Twp. of Upper Darby, 5 F.

Supp. 3d 731, 744 (E.D. Pa. 2014) (noting that, under Pennsylvania law, "assault is an

intentional attempt by force to do an injury to the person of another, and a battery is committed

whenever the violence menaced in an assault is actually done, though in ever so small a degree,

upon the person"); Davila v. United States, 247 F. Supp. 3d 650, 658 (W.D. Pa. 2017) (noting

that both false arrest and false imprisonment claims require proof that the defendant "intended to

confine the plaintiff" through conduct that "directly or indirectly produced such confinement"

and that the "plaintiff was either conscious of or harmed by the conduct").  As such, the Court

will deny the Township Defendants' motions to dismiss Plaintiffs' state law claims against the

Officer Defendants.

C.      State Law Abuse-of-Process Claims Against the Gap

The last set of claims asserted by Plaintiffs are for abuse of process against the Gap under

Pennsylvania law.[9]  "The common law cause of action for abuse of process 'is defined as the use

of legal process against another primarily to accomplish a purpose for which it is not designed.'"

See Hvizdak v. Linn, 190 A.3d 1213, 1228 (Pa. Super. 2018) (quoting Rosen v. American Bank

of Rolla, 627 A.2d 190, 192 (Pa. Super. 1993)).  "To make out a common law cause of action for

abuse of process, the plaintiff must allege that the defendant (1) used legal process against him;

(2) for a purpose other than for which it was designed; and (3) caused him harm."  Rajan v.

Crawford, No. 21-cv-01456, 2022 WL 474454, at *9 (E.D. Pa. Feb. 16, 2022).  "The Supreme

Court of Pennsylvania has said that '[t]he gist of an action for abuse of process is the improper

use of process after it has been issued, that is, a perversion of it.'"  See Gen. Refractories Co. v.

Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003) (alteration in original) (emphasis

added) (quoting McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987)).

The allegations relating to Plaintiffs' abuse of process claims are as follows:

> 64.  In contacting law enforcement authorities as aforesaid and knowingly
> making a false report of an active retail theft and knowingly making a false report
> that three black females who stole from The Gap [Outlet] came into Old Navy and
> left with some items, Ms. Staton used a legal process against [Plaintiffs], primarily
> to accomplish a purpose for which the process was not designed, i.e., to improperly

---

[9] "The tort of abuse of process arises under state law; the fact that the process that was allegedly abused was federal in nature does not transform the state tort into a federal claim."  Fouad v. Milton Hershey Sch. & Sch. Tr., No. 1:19-cv-00253, 2020 WL 5775018, at *5 (M.D. Pa. Sept. 28, 2020).

and illegally harass, annoy, and act in a racially discriminatory manner toward [Plaintiffs].

65.   It is reasonably believed, and therefore averred, that with regard to her aforesaid abuse of process, Ms. Staton was acting pursuant to the policies, procedures, and customs of Defendant Gap Inc.

66.   It is believed, and therefore averred, that the aforesaid actions of Ms. Staton and Defendant Gap Inc. were motivated by a predisposed bias due to the fact that [Plaintiffs] are African-American individuals.

67.   Defendant Gap Inc. failed to properly or adequately train its agents and employees working at the Tanger Old Navy and The Gap Outlet, and/or failed to create, establish, train, promote, or enforce proper or adequate policies, procedures, or customs to prevent the type of improper actions taken by its employees as aforesaid.

68.   As a direct, proximate, and reasonably foreseeable result of the improper actions of Defendant Gap Inc.'s agents and employees as aforesaid, [Plaintiffs] were each falsely accused of criminal activity, arrested, incarcerated, and subjected to an unlawful search and seizure of her person and belongings.

(Doc. Nos. 26 ¶¶ 64-68, 27 ¶¶ 71-75.)

These allegations do not state a claim for abuse of process.  As reflected in the case law cited above, a key element of an abuse-of-process claim is the perversion of a legal process <u>after</u> process has been issued.  "The gravamen of the misconduct for which the liability stated [under this tort] is imposed is not the wrongful procurement of legal process or the <u>wrongful initiation of criminal or civil proceedings</u>; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  <u>Tarbox v. Butler Twp.</u>, No. 3:14-cv-01346, 2015 WL 6157173, at *7 (M.D. Pa. Oct. 19, 2015) (alteration in original) (quoting Restatement (Second) of Torts, § 682, cmt. a)).  It is for this reason that courts have dismissed abuse-of-process claims asserted under Pennsylvania law where the allegedly wrongful conduct occurred "before criminal proceedings" commenced.  <u>See, e.g.</u>, <u>Sheare v. Borough of Olyphant</u>, No. 3:11-cv-01639, 2012 WL 2527022, at *8 (M.D. Pa. June 29, 2012).

Applying the above standard here, the Court concludes that Plaintiffs have failed to plead abuse-of-process claims because they do not allege that the Gap's employees (either Staton or Roman) misused a legal process <u>after</u> it issued.  <u>See id.</u> (dismissing claim for abuse of process where the claim was "based on the alleged improper commencement of criminal action against [the plaintiff] and not on the pervasion of process after it issued" (internal quotation marks omitted)); <u>see also</u> <u>Gebhart v. Steffen</u>, No. 1:12-cv-01837, 2013 WL 160218, at *2 (M.D. Pa. Jan. 15, 2013) (dismissing abuse-of-process claim where the plaintiff did not allege "that, after initiation of the criminal proceedings, [the defendant] misused the legal process in any way"); Restatement (Second) of Torts § 682 cmt. a (noting that "[t]he subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section"); <u>cf.</u> <u>Tarbox</u>, 2015 WL 6157173, at *7 (stating that "[t]he use of criminal process is clearly authorized for purposes of arresting and prosecuting criminal defendants").

While Plaintiffs have taken great pains to challenge the authority cited by the Gap (Doc. Nos. 39 at 6-12, 40 at 8-13), they have not pointed to any authority directly supporting their positions.  The Browns assert that reporting a crime is a "legal process" without providing any authority for that proposition.  (Doc. No. 40 at 13.)  Reid asserts that she has adequately alleged facts that would permit a reasonable "jury to conclude that [the Gap] initiated, engaged [in,] or participated in legal process to accomplish a purpose for which the process is not designed, <u>i.e[.]</u>, investigation and prosecution of a crime."  (Doc. No. 39 at 11.)  The facts alleged by Plaintiffs do not plead such a claim, and Plaintiffs have not otherwise offered any authority for their position that Staton (or Roman) misused a legal process after it issued.   Plaintiffs now argue, in their briefing, that they have stated claims for <u>malicious</u> abuse of process.  (Doc. Nos. 39 at 5, 40

at 13.)  However, Plaintiffs do not assert a malicious abuse-of-process claim in their complaint, and the claim is therefore not before the Court for consideration.  The Court, accordingly, will grant the Gap's motion to dismiss Plaintiffs' abuse-of-process claims.

D.     Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)).  As their amended complaints currently stand, Plaintiffs have failed to plausibly allege Monell claims against the Township and the abuse-of-process claims against the Gap.  The Court will permit Plaintiffs to amend their pleadings to address the deficiencies identified with respect to their Monell claims, as well as their abuse-of-process claims to allege, in the alternative, malicious abuse-of-process claims.  Permitting such amendment would not be inequitable or futile.[10]

_____

[10] Unlike the tort of abuse of process, claims for malicious abuse of process may be based on allegations that "a defendant initiated proceedings for an improper or malicious purpose unrelated to securing the just administration of our laws."  See Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 397 (M.D. Pa. 1995) (emphasis added), aff'd, 91 F.3d 122 (3d Cir. 1996); see also Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413, 415 (Pa. 1943) (stating that "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued").  The Gap does not argue that it would be futile to permit Plaintiffs to file amended pleadings asserting malicious abuse-of-process claims—rather, they argue that Plaintiffs should not be permitted to assert claims of malicious abuse of process because they did not assert such claims in their amended complaints.  (Doc. Nos. 44 at 2-3, 45 at 2-3.)

**IV.      CONCLUSION**

For the foregoing reasons, the Court will grant the Township Defendants' motion to dismiss Plaintiffs' <u>Monell</u> claims asserted against the Township, grant the Gap's motion to dismiss the abuse-of-process claims asserted against it, deny the pending motions in all other respects, and permit Plaintiffs to file third amended complaints to remedy the deficiencies identified herein as pertains to their <u>Monell</u> claims against the Township Defendants and their state law claims against the Gap.  An appropriate Order follows.