IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUASHAE BROWN, et al., | : | |
|     Plaintiffs | : | No. 1:22-cv-00165 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| THE GAP INC., et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court are four motions to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), by which Defendant The Gap Inc. ("Gap Inc.")[1] (Doc. Nos. 73, 75) and Defendants Derry Township (the "Township"), Police Officers Marygrace Kepple, Dennis Eckenrode, Rian Bell, and Rebeca Kessler, and Detective Tom Pavone ("Officer Defendants," and with the Township, the "Township Defendants") (Doc. Nos. 71–72) move to dismiss the amended complaints filed, respectively, by Plaintiffs Quashae Brown and Quanyae Brown (the "Browns") (Doc. No. 61) and Trinity Tiina Arlez Bellamy Reid (collectively, "Plaintiffs") (Doc. No. 62). For the following reasons, the Court will grant all four motions to dismiss.

**I.   BACKGROUND**[2]

In February 2022, Plaintiffs Quashae Brown and Quanyae Brown (the "Browns") and, separately, Trinity Tiina Arlez Bellamy Reid (collectively, "Plaintiffs") filed complaints in this

---

[1] Gap Inc. asserts that "Plaintiffs incorrectly identify Defendant 'Gap, Inc.' as 'The Gap Inc.'" and states that, "[s]hould the claim against Gap, Inc. proceed, Gap preserves all defenses including, but not limited to, vicarious liability for the individuals named in the Second Amended Complaint." (Doc. No. 76 at n.1.) This is a nonissue given the Court's conclusion that Plaintiffs have failed to state viable claims against Gap Inc., see infra.

[2] This background is drawn from the Plaintiffs' second amended complaints, the allegations of which the Court has accepted as true. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004). Because the allegations of Reid are virtually identical to those of the Browns, both second amended complaints are cited, but the Court generally quotes from the Brown's pleading.

Court asserting that Gap Inc. employees falsely accused them of retail theft.  (Doc. No. 1); see Reid v. Kepple, No. 1:22-cv-00165 (M.D. Pa. filed Feb. 2, 2022), ECF No. 1.  They also asserted that the Township Defendants unlawfully seized, arrested, and detained them.  (Id.)  At the parties' request, the Court consolidated Reid's action into this one, and the Browns (Doc. No. 26) and Reid (Doc. No. 27) later filed amended complaints.  Defendants later filed—and the Court granted in part—motions to dismiss Plaintiffs' claims.  (Doc. Nos. 30–32; 34; 59–60.)  Specifically, the Court dismissed, without prejudice, Plaintiffs' Monell claim against the Township and their claims against Gap Inc.  (Doc. No. 63.)  The Browns and Reid then filed second amended complaints, reasserting a Monell claim against the Township and asserting a malicious prosecution claim against Gap Inc.  (Doc. Nos. 61 (Browns), 62 (Reid)).

      A.      **Events Leading up to Arrests, Arrests, and Detention**

In their operative, second amended complaints ("SACs"), Plaintiffs allege the following timeline of events, all of which stem from a 2020 incident in which Gap Inc. employees, followed by the Officer Defendants, accused Plaintiffs of shoplifting from two stores at the Tanger Outlets in Hershey, Pennsylvania ("Outlets").  (Doc. Nos. 61–62.)  The Browns are sisters, and at the time, Quashae was a college student, while Quanyea and the Browns' cousin, Plaintiff Reid, were high school seniors.  (Doc. Nos. 61 ¶¶ 16, 18; 62 ¶¶ 17, 19.)  All three Plaintiffs are African American.  (Doc. Nos. 61 ¶ 17; 62 ¶ 18.)  From late morning to early afternoon on December 22, 2020, Plaintiffs purchased several items from stores at the Outlets, including Old Navy and The Gap Outlet, and placed the items in the vehicle by which they had arrived.  (Doc. Nos. 61 ¶¶ 15, 19–20; 62 ¶¶ 16, 22–24.)  Gap Inc. owns The Gap Outlet and the Old Navy outlet stores.  (Doc. Nos. 61 ¶ 6; 62 ¶¶ 10, 21.)

At around 12:51 p.m., Old Navy employee Beth Anne Staton ("Staton") called 911,

"knowingly ma[de] a false report of an active retail theft at Old Navy," and "knowingly ma[de] a false report that three black females who stole from The Gap Outlet came into Old Navy and left with some items."  (Doc. Nos. 61 ¶ 35; 62 ¶ 35.)  In response, the Derry Township Police Department ("DTPD") dispatched the Officer Defendants to the scene, and they arrived minutes later.  (Doc. Nos. 61 ¶ 36; 62 ¶ 37.)

Upon arriving at the scene, at around 12:54 p.m., Officer Kepple met with Staton at Old Navy.  (Doc. Nos. 61 ¶ 37; 62 ¶ 38.)  Staton was reviewing Old Navy surveillance footage because she had received a call from Gap employee Tania Roman ("Roman") stating that the individuals depicted in the video—later identified as Plaintiffs—were "acting suspicious" and "had stolen from [the Gap] big time."  (Doc. Nos. 61 ¶¶ 39–40, 44–45, 47; 62 ¶¶ 39–40, 42–43, 49.)  Staton showed Officer Kepple the footage, which Staton claimed depicted Quanyae stealing a six-dollar baby onesie at the 12:15 p.m. mark in the video.  (Doc. Nos. 61 ¶ 42; 62 ¶ 43.)  But the video did not depict any theft and showed Quanyae putting the onesie back on the shelf and not taking it.  (Doc. Nos. 61 ¶ 43; 62 ¶ 44.)

After meeting with Staton, Officer Kepple, with Officer Eckenrode, proceeded to interview Roman at The Gap Outlet and, en route, happened upon Quanyae and Reid, who left The Gap Outlet and were headed to the vehicle in which they arrived.  (Doc. Nos. 61 ¶¶ 45–47; 62 ¶¶ 25–26.)  Kepple and Eckenrode detained, handcuffed, arrested, and placed in separate police vehicles.  (Doc. Nos. 61 ¶ 24, 46; 62 ¶ 26.)  Reid and Quanyae denied having stolen any items and indicated that they had receipts for their purchases, urging the officers to check the items in their bags against their receipts.  (Doc. Nos. 61 ¶ 23; 62 ¶ 27.)   The officers searched Reid and Quanyae and seized their purchased items and personal belongings.  (Doc. Nos. 61 ¶ 22; 62 ¶ 28.)  Shortly thereafter, Kepple and Officer Bell arrested Quashae and searched and

3

seized items from her.  (Doc. Nos. 61 ¶ 24; 62 ¶ 29.)  Kepple then proceeded to The Gap Outlet and interviewed Roman, who told Kepple that "she had simply told [] Staton that the three girls were 'acting suspicious'" and never stated to anyone "that the girls had stolen anything."  (Doc. Nos. 61 ¶¶ 47–48; 62 ¶¶ 49–50.)  Kepple took no action and instead permitted the arrests to continue.  (Doc. Nos. 61 ¶ 49; 62 ¶ 51.)

Following the arrests, at around 1:45 p.m., the officers transported Plaintiffs to the DTPD and detained them against their will until about 4:10 p.m., after which they were released from custody because they had committed no crime.  (Doc. Nos. 61 ¶¶ 30–32; 62 ¶¶ 34–35.)  The Browns were held in locked jail cells, and Reid was placed in a juvenile detention room.  (Doc. Nos. 61 ¶¶ 31–32; 62 ¶¶ 33–34.)  No charges were filed because none of the Plaintiffs had committed a crime.  (Doc. Nos. 61 ¶ 32; 62 ¶ 35.)

      **B.**      **Allegations Regarding Lack of Probable Cause**

Plaintiffs allege that from before, during, and after the arrests and detentions, the Officer Defendants knew that Plaintiffs had not stolen any merchandise or committed any other crime but arrested, searched, and detained them nonetheless.  Specifically, Plaintiffs allege that: (1) prior to their arrests, none of the Officer Defendants "had a reasonable basis for initiating, continuing, or failing to immediately terminate the aforesaid detentions, arrests, seizures, and incarcerations of [Plaintiffs]"; (2) "[b]efore the Derry Township police personnel arrested [them], and as the arrests continued for approximately three hours, Officers Kepple and Eckenrode had information clearly demonstrating [that] Quanyae had not engaged in retail theft as alleged by [] Staton"; (3) "[b]efore the Township Defendants transported [Plaintiffs] . . . to police headquarters, . . . Officer Kepple and Officer Eckenrode had information clearly demonstrating there was no reasonable basis to suspect [Plaintiffs] had participated in retail theft

4

or any other criminal activity"; (4) "[i]n connection with the initiation and continuation of the arrests of [Plaintiffs], [the Officer Defendants] each had information clearly demonstrating there was no reasonable basis to suspect [Plaintiffs] had participated in retail theft or any other criminal activity"; (5) the Officer Defendants had no "reasonable basis for the arrest[,] detention[,] [and incarceration of [Reid], nor for the seizure of her property"; (6) "[i]n connection with initiating and continuing the arrests of [Plaintiffs], the involved Derry Township police personnel possessed but disregarded evidence and information showing that [none of them] had committed any crime" and failed to "conduct[] a timely or reasonable investigation regarding the girls' denials that they had stolen anything"; and (7) the Officer Defendants "initiated and continued the aforesaid false accusations and arrests of [Plaintiffs] without probable cause, in reckless disregard of rights, and with malice, and despite the existence of credible, exculpatory evidence[.]" (Doc. Nos. 61 ¶¶ 27–29, 48–56; 62 ¶¶ 32–33, 53–62.)

### C. Motions and Briefing

The Gap and the Township Defendants filed their motions to dismiss Plaintiffs' SACs on June 30, 2023 (Doc. Nos. 71–73; 75) and also filed briefs in support of their respective motions (Doc Nos. 74; 76; 80–81). Plaintiffs filed briefs in opposition in February 2023 (Doc. Nos. 79; 82–84), and Plaintiffs' filed reply briefs in late February and early March 2023 (Doc. Nos. 85; 86–88). Accordingly, all four motions to dismiss are ripe for disposition.

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all

material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 664).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

In its Memorandum and Order resolving Defendants' motions to dismiss Plaintiffs' first amended complaints, the Court permitted amendment as to two sets of claims: Plaintiffs' Monell claim against Defendant Derry Township and their malicious prosecution/malicious abuse of process claim asserted against The Gap Outlet.  Accordingly, those are the only two claims properly before the Court.  The Court will disregard the Township Defendants' attempt to

relitigate—without having filed a timely motion to reconsider—the Court's prior ruling that Plaintiffs sufficiently stated an equal protection claim as to the Officer Defendants. (Doc. Nos. 71 ¶ 19–21; 72 ¶ 19-21.) The Court addresses Defendants' motions to dismiss the two relevant claims below.

    A.    **Section 1983 Monell Claim Against Derry Township**

        1.    **Legal Standard**

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim for relief under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under color of state law." See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

Municipalities such as Derry Township are considered "persons" under § 1983 and may be held liable for injuries caused by violations of constitutional rights. See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). They can only be held liable, however, "for their own illegal acts." See Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986). It is only when a

7

municipality's "execution of [a] policy or custom . . . inflicts the injury" that the municipality "as an entity is responsible under § 1983." See Monell, 436 U.S. at 694. To plead a § 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." See City of Canton v. Harris, 489 U.S. 378, 385 (1989). A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'" See Natale, 318 F.3d at 584 (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)). In order to recover from a municipality under this theory of liability, a plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." See City of Canton, 489 U.S. at 385. Complaints alleging municipal liability under § 1983 are not subject to heightened pleading standards. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). However, a plaintiff attempting to establish a Monell claim must "identify a custom or policy, and specify what exactly that custom or policy was." See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

In the alternative, a municipality may be liable under § 1983 for a failure to train, monitor, or supervise—however, the failure alleged in such a circumstance must amount to "deliberate indifference to the constitutional rights of persons with whom the police come in contact." See City of Canton, 489 U.S. at 388. To establish deliberate indifference in this context, a plaintiff must generally show the failure alleged "has caused a pattern of violations." See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Where a failure to train claim

is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious." See City of Canton, 489 U.S. at 390 n.10.  Further, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'"  See Thomas v. Cumberland Cnty., 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)).

    **2.**    **Analysis**

Here, as to the first element of Plaintiffs' Monell claims—the existence of an underlying constitutional violation—the Court previously concluded that Plaintiffs have plausibly alleged violations of their constitutional rights.  (Doc. No. 59.)  Yet, as was the case with Plaintiffs' first amended complaints, their SACs do not state a plausible Monell cause of action against Derry Township.  Below are the assertions that form the bases of Plaintiffs' Monell claims.

> 75. Defendant Derry Township operates, administers, maintains, and controls the Derry Township Police Department.
>
> 76. Defendant Derry Township has established and/or acquiesced to policies, procedures, directives, practices, and customs for its Police Department regarding searches, seizures, detentions, arrests, and imprisonments of citizens accused of retail theft.
>
> 77. In establishing and/or acquiescing to these policies, procedures, directives, practices, and customs, Defendant Derry Township has a duty under the Fourth and Fourteenth Amendments to the United States Constitution to refrain from enforcing or continuing in effect policies, procedures, directives, practices, or customs that create a substantial likelihood that citizens will be subjected to improper and unlawful searches, seizures, detentions, arrests, and imprisonments by its Police Department and the individuals working therein.
>
> 78. Notwithstanding its aforesaid duty, Defendant Derry Township committed one or more of the following wrongful acts or omissions in violation of and with deliberate indifference to [Plaintiffs'] constitutional rights:

(a) Failing to establish appropriate policies, procedures, directives, practices, and/or customs regarding whether, when, and how to search, seize, detain, arrest, and imprison an individual accused by a storeowner of committing retail theft where there is no objective proof of such crime and where potentially exculpatory video surveillance evidence is available to be reviewed by investigating police officers and/or detectives;

(b) Allowing policies, procedures, directives, practices, and customs to continue in force and effect which resulted in the improper search, seizure, detention, arrest, and imprisonment of search and seizure of [Plaintiffs]; and

(c) Establishing, maintaining, and/or allowing to exist and continue policies, procedures, directives, practices, and/or customs of failing to properly and effectively supervise, discipline, train, and retrain individuals in its Police Department with regard to searches, seizures, detentions, arrests, and imprisonments under circumstances such as those presented herein.

79. The aforesaid improper searches, seizures, detentions, arrests, and imprisonments of [Plaintiffs] were the direct and proximate result of Defendant Derry Township's failure to properly and/or sufficiently formulate, institute, oversee, and/or supervise the training, supervision, and discipline of individuals working within the Derry Township Police Department with regard to searches, seizures, detentions, arrests, and imprisonments of individuals accused by a storeowner of committing retail theft where there is no objective proof of such crime and where potentially exculpatory video surveillance evidence is available to be reviewed by investigating police officers and/or detectives.

80. The aforesaid unlawful searches, seizures, detentions, arrests, and imprisonments of [Plaintiffs] were the direct and proximate result of the failure of Defendant Derry Township to properly and/or sufficiently develop, formulate, institute, and/or maintain appropriate policies, practices, procedures, and customs regarding law enforcement encounters such as the one set forth herein, especially with regard to investigating accusations of retail theft.

81. Defendant Derry Township and its policymakers, including but not limited to the township's board of supervisors as well as its supervisory agents and/or employees in the Derry Township Police Department, acted with deliberate indifference to an unreasonable risk that the rights of citizens with whom police officers and detectives within the Derry Township Police Department come into contact would be deprived of their rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, thereby directly and proximately causing the aforesaid unlawful searches, seizures, detentions, arrests, and imprisonments of [Plaintiffs].

82. As a direct, proximate, and foreseeable result of the aforesaid acts and omissions of Defendant Derry Township, [Plaintiffs] have each suffered the

violations and incurred the damages and harms set forth in [SACs].

(Doc. No. 61 ¶¶ 75–82); see (Doc. No. 62 ¶¶ 84–90).

Even accepting these sweeping allegations in the SACs as true, and even drawing all inferences from them in Plaintiffs' favor, they do not set forth non-conclusory "facts showing the existence of a policy or a custom attributable to the Township which deprived [them] of any constitutional right."  See Titus v. Newtown Twp., 621 F. Supp. 754, 755 (E.D. Pa. 1985).  Plaintiffs "allege[] a single instance of [related] arrest[s] based on a [proven] false report," which "is insufficient to state a claim of municipal liability."  See Deemer v. City of Oil City, No. 1:19-cv-00380, 2021 WL 4391275, at *5 (W.D. Pa. Sept. 24, 2021).  They plead "vague and conclusory allegations"—mere "conclusory and general averments"—none of which "satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability."  See id. (internal quotation marks omitted) (quoting Wood v. Williams, 568 F. App'x 100, 102–04 (3d Cir. 2014) (unpublished)).

Further, allegations of a "failure to provide specific training" must have a "causal nexus with [the claimed] injuries," and Plaintiffs have failed to plausibly allege "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  See Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  The allegations of a failure to train are conclusory and merely parrot the relevant legal standard without providing factual support.  See id.; see also, e.g., Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001) (dismissing failure to train claim where the plaintiff pleaded no facts to support the contention that his injuries were caused by a failure to train, failed to identify the specific training the city should have offered, and failed to establish that training was not provided).  Nor can, as here, claims of failures to supervise, discipline, and

11

monitor be pleaded in conclusory fashion.  See, e.g., Moresi v. City of Phil., No. 15-cv-00038, 2015 WL 4111724, at *4 (E.D. Pa. July 8, 2015) (dismissing Monell claims asserting "failure to investigate, supervise, or discipline [] police officers" where, "[a]part from the single incidence of alleged police misconduct against [the plaintiff], [the plaintiff] plead[ed] no other facts necessary to establish a municipal liability claim").  Accordingly, the Court will grant the Township Defendants' motions to dismiss Plaintiffs' Monell claims.

### B. State Law Malicious Prosecution Claim Against Gap Inc.[3]

#### 1. Legal Standard

A cause of action for malicious prosecution under Pennsylvania law "has three elements: (1) the defendant has initiated criminal proceedings against the plaintiff without probable cause; (2) the defendant has acted deliberately with malice; and (3) the proceedings have terminated in favor of the plaintiff."  See Braswell v. Wollard, 243 A.3d 973, 977 (Pa. Super. Ct. 2020) (citing Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010)).  Pennsylvania courts rely heavily on Restatement (Second) of Torts to determine the scope of liability under a malicious prosecution cause of action.  See Stevens v. Sullum, No. 3:20-cv-01911, 2021 WL 2784817, at *13 (M.D. Pa. July 2, 2021) ("In analyzing claims for malicious prosecution, Pennsylvania

---

[3] In permitting amendment following its partial dismissal of the first amended complaints as against Gap Inc. without prejudice, the Court acknowledged Plaintiffs' assertion that they had established a "malicious abuse of process claim," although they did not plead such a claim in their first amended complaints.  (Doc. No. 59 at 30 n.10); see (Doc. No. 40 at 12–13).  While there is some authority for the proposition that a malicious abuse of process claim is distinct from a malicious prosecution claim, see, e.g., Jennings v. Shuman, 567 F.2d 1213, 1218 (3d Cir. 1977) (noting, as opposed to a malicious prosecution claim, that "in a malicious abuse of process case, presence or absence of probable cause is irrelevant"), Plaintiff Reid now asserts that "Common Law 'Malicious Prosecution" and 'Malicious Abuse of Process' are interchangeable" (Doc. No. 82 at 7 n.1), and neither party has identified any authority or provided specific arguments in support of a viable malicious abuse of process claim separate and apart from a malicious prosecution claim (Doc. Nos. 79; 81).

12

courts have relied extensively on the Restatement (Second) of Torts."); see also Burgos v. Morgan, Lewis & Bockius, LLP, No. 735 EDA 2015, 2017 WL 57879, at *7 (Pa. Super. Ct. Jan. 5, 2017) (noting that Pennsylvania law as to malicious prosecution has developed largely based on the Restatement (Second) of Torts §§ 653 and 654).

Three sections of the Restatement of Torts (Second) are relevant to Plaintiffs' claims. The first is Restatement (Second) of Torts § 653, which sets forth the elements of a malicious prosecution cause of action:

> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
>     (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
>     (b) the proceedings have terminated in favor of the accused.

See id. The second is § 654, which defines "Institution of Criminal Proceedings" as such:

> (1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.
> (2) Criminal proceedings are instituted when
>     (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
>     (b) without the issuance of process an indictment is returned or an information filed against him; or
>     (c) he is lawfully arrested on a criminal charge.

See id. And the third is § 659, which relates to "Manner of Termination" and provides:

> Criminal proceedings are terminated in favor of the accused by
>     (a) a discharge by a magistrate at a preliminary hearing, or
>     (b) the refusal of a grand jury to indict, or
>     (c) the formal abandonment of the proceedings by the public prosecutor, or
>     (d) the quashing of an indictment or information, or
>     (e) an acquittal, or
>     (f) a final order in favor of the accused by a trial or appellate court.

See id.

Together, and as relevant here, these provisions stand for the proposition that a malicious prosecution claim can be maintained (1) by a plaintiff who was "lawfully arrested on a criminal charge," (2) against a "private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged," (3) where the criminal proceedings are terminated in favor of the accused. See id. §§ 653–54, 659.  Regarding claims against a private person, Pennsylvania courts have cited approvingly comment g to § 653 of the Restatement (Second) of Torts, which states as follows:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but <u>giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not</u>.  When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain.  The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.  In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

See Bradley v. Gen. Acc. Ins. Co., 778 A.2d 707, 710–11 (Pa. Super. Ct. 2001) (emphasis added) (quoting Restatement (Second) of Torts § 653 cmt. g).[4]  Within this framework, the Court turns

---

[4] For purposes of this Memorandum, the Court assumes, without deciding, that Gap Inc. is liable for the alleged actions of Staton and Roman.

to an analysis of Plaintiffs' claims.

### 2. Analysis

Based on the Plaintiffs' allegations and the applicable law, the Court concludes that Plaintiffs have failed to state malicious prosecution claims against Gap Inc. Plaintiffs' allegations, accepted as true, establish that the Officer Defendants were "left entirely to [their] discretion to initiate the [criminal] proceedings or not." See id. According to the SACs, prior to Plaintiffs' arrests, and despite the initial representations by Staton, the Officer Defendants had actual knowledge of the fact that Plaintiffs had neither stolen any merchandise nor committed any other crime and, in fact, knew that they lacked probable cause to arrest Plaintiffs. (Doc. Nos. 61 ¶¶ 27–29, 48–56; 62 ¶¶ 32–33, 53–62.) For this reason alone, regardless of the other elements of Plaintiffs' malicious prosecution claim, Plaintiffs have failed to state a plausible malicious prosecution claim because their allegations do not establish, prima facie, the cause of action's first element, i.e., initiation of criminal proceedings by Gap Inc. See Braswell, 243 A.3d at 977.

The Court recognizes the proposition that, "[i]f . . . the information is known by the giver [i.e., private person] to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." See Restatement (Second) of Torts § 653 cmt. g. But according to the allegations here, the Officer Defendants were not deprived of an intelligent exercise of their discretion. Rather, they knew they lacked probable cause, viewed the video that allegedly depicted theft but actually showed none, discovered that Roman had not accused Plaintiffs of shoplifting, and ignored exculpatory statements and other evidence, including receipts matching the items in Plaintiffs' possession. This is simply not a case where "an intelligent exercise of [an] officer's discretion bec[a]me[] impossible," see id., where, in other words, "a private individual who

reports suspected criminal conduct to a law enforcement officer causes the institution of any subsequent proceedings initiated as a result of the information provided." See Stevens, 2021 WL 2784817, at *13 (emphasis added). In contradistinction, as but one example, the Pennsylvania Superior Court in Braswell found it impossible "for [an officer] to have grounded his probable cause determination on evidence other than [the defendant's] version of events" because the "sole basis for the officer to believe [the plaintiff] to be the perpetrator was [the defendant's] statement" accusing the plaintiff of "committing a crime." See Braswell, 243 A.3d at 978 (emphasis added).

The authorities upon which Plaintiffs rely (Doc. Nos. 79 at 8–9, 11–12; 82 at 8–9, 11) do not further their arguments. Plaintiffs rely on Bradley, but the court in that case simply held that "prosecuting authorities had the discretion to determine whether charges should be pursued" and could not be held liable for malicious prosecution. See 778 A.2d at 712. The Officer Defendants in this case similarly retained the discretion to determine whether to arrest and detain Plaintiffs, and Bradley therefore appears to contradict rather than support Plaintiffs' position. Plaintiffs also cite to Gallucci v. Phillips & Jacobs, Inc., 614 A.2d 284 (Pa. Super. Ct. 1992), but the court in that case found "[in]sufficient process to support a cause of action in malicious prosecution" because "[t]he only process issued . . . was a records subpoena issued by the grand jury." See id. at 290. This case does not involve any similar facts or legal issues, making Gallucci inapposite.

Plaintiffs' reliance on a third case—Rivera-Guadalupe v. City of Harrisburg, No. 1:19-cv-01400 (M.D. Pa. July 22, 2020), ECF No. 30 at 14—is similarly misplaced. In Rivera-Guadalupe, the plaintiff alleged "that [a detective] contributed to the initiation of the criminal case against [the plaintiff] by advising the district attorney's office to bring charges based on insufficient facts," and the court concluded that such an allegation satisfied "the 'initiation'

16

element of malicious prosecution under both federal and Pennsylvania law." See id. Dissimilar to Plaintiffs' allegations in this case, Rivera-Guadalupe involved a detective-defendant who led an investigation, applied for and was granted a search warrant, and, despite obtaining only exculpatory evidence, arrested the plaintiff. See id. at 2. Here, the Officer Defendants learned, before arresting Plaintiffs, that the only bases upon which to believe Plaintiffs had committed a crime were patently false, according to the allegations in the SACs, which the Court must assume are true at this stage of the proceedings. In short, based on the allegation set forth in the SACs, the Court is constrained to conclude that Plaintiffs' pleadings establish that the Officer Defendants retained "the discretion to determine whether charges should be pursued." See Bradley, 778 A.2d at 712. The Court will therefore grant Gap Inc.'s motions to dismiss.

### C. Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." See Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)). Here, the Court finds that permitting Plaintiffs to file a third amended complaint would be futile given their continuing inability to state any viable claims against Gap Inc. or any plausible Monell claims against Derry Township. The Court therefore declines to permit Plaintiffs another opportunity to file amended pleadings and will direct the Clerk of Court to terminate Gap Inc. and Derry Township from this action.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Township Defendants' motions to dismiss (Doc. Nos. 71–72) and Gap Inc.'s motions to dismiss (Doc. Nos. 73, 75).  The Court will not permit further leave to amend.  Because Plaintiffs have not stated any viable claims against either Gap Inc., or Derry Township, the Court will direct the Clerk of Court to terminate those Defendants from this action.  An appropriate Order follows.